the DWELLING. In the event an institutional first mortgagee acquires title to a DWELLING through foreclosure, or through a deed in lieu of foreclosure and ASSOCIATION does not exercise its right of first refusal within the prescribed time, then such institutional first mortgagee may sell or lease such DWELLING free of the right of first refusal granted to ASSOCIATION, but the grantee or lessee from such institutional first mortgagee shall be subject to the right of first refusal granted to ASSOCIATION pertaining to the lease or sale of a DWELLING.

## XXVII

### ASSOCIATION TO MAINTAIN REGISTRY OF OWNERS AND MORTGAGEES

ASSOCIATION shall at all times maintain a Register setting forth the names of the owners of all of the DWELLINGS, and in the event of the sale or transfer of any DWELLING to a third party, the purchaser or transferee shall notify ASSOCIATION in writing of his interest in such DWELLING together with such recording information as shall be pertinent to identify the instrument by which such purchaser or transferee has acquired his interest in any DWELLING. Further, the owner of each DWELLING shall at all times notify ASSOCIATION of the names of the parties holding any mortgage or mortgages on any DWELLING, the amount of such mortgage or mortgages, and the recording information which shall be pertinent to identify the mortgage or mortgages. The holder of any mortgage or mortgages upon any DWELLING may, if he so desires, notify ASSOCIATION of the existence of any mortgage or mortgages held by such party on any DWELLING, and upon receipt of such notice, ASSOCIATION shall register in its records all pertinent information pertaining to the same.

## XXVIII

### ASSESSMENTS: LIABILITY, LIEN AND ENFORCEMENT

ASSOCIATION is given the authority to administer the operation and management of the CONDOMINIUM, it being recognized that the delegation of such duties to one entity is in the best interests of the owners of all DWELLINGS. To properly administer the operation and management of the Project, ASSOCIATION will incur, for the mutual benefit of all of the owners of DWELLINGS, costs and expenses which will be continuing or non-recurring costs, as the case may be, which costs and expenses are sometimes herein referred to as "common expense." To provide the funds necessary for such proper operation and management, the said ASSOCIATION has heretofore been granted the right to make, levy and collect assessments against the owners of all DWELLINGS and said DWELLINGS. In furtherance of said grant of authority to ASSOCIATION to make, levy and collect assessments to pay the costs and expenses for the operation and management of the CONDOMINIUM, the following provisions shall be operative and binding upon the owners of all DWELLINGS, to-wit:

A. All assessments levied against the owners of DWELLINGS and said DWELLINGS shall be uniform and, unless specifically otherwise provided for in this Declaration of Condominium, the assessments made by ASSOCIATION shall be in such proportion that the amount of assessment levied against each owner of a DWELLING and his DWELLING shall bear the same ratio to the total assessment made against all owners of DWELLINGS and their DWELLINGS as does the undivided interest in COMMON ELEMENTS appurtenant to each DWELLING bear to the total undivided interest in

20.

**Exhibit E**

COMMON ELEMENTS appurtenant to all DWELLINGS, without increase or dimunition for the existence or lack of existence of any exclusive right to use a parking space constituting LIMITED COMMON ELEMENTS which may be an appurtenance to any DWELLING. Should ASSOCIATION be the owner of any DWELLING or DWELLINGS, the assessment which would otherwise be due and payable to ASSOCIATION by the owner of such DWELLING or DWELLINGS, reduced by the amount of income which may be derived from the leasing of such DWELLING or DWELLINGS by ASSOCIATION, shall be apportioned and assessment therefor levied ratably among the owners of all DWELLINGS which are not owned by ASSOCIATION, based upon their proportionate interests in the COMMON ELEMENTS exclusive of the interests therein appurtenant to any DWELLING or DWELLINGS owned by ASSOCIATION.

B. The assessment levied against the owner of each DWELLING and his DWELLING shall be payable in annual, quarterly or monthly installments, or in such other installments and at such times as may be determined by the Board of Directors of ASSOCIATION.

C. The Board of Directors of ASSOCIATION shall establish an Annual Budget in advance for each fiscal year which shall correspond to the calendar year, and such Budget shall project all expenses for the forthcoming year which may be required for the proper operation, management and maintenance of the CONDOMINIUM, including a reasonable allowance for contingencies and reserves, such Budget to take into account projected anticipated income which is to be applied in reduction of the amounts required to be collected as an assessment each year. Upon adoption of such Annual Budget by the Board of Directors of ASSOCIATION, copies of said Budget shall be delivered to each owner of a DWELLING and the assessment for said year shall be established based upon such Budget, although the delivery of a copy of said Budget to each owner shall not affect the liability of any owner for such assessment. Should the Board of Directors at any time determine, in the sole discretion of said Board of Directors, that the assessments levied are or may prove to be insufficient to pay the costs of operation and management of the CONDOMINIUM, or in the event of emergencies, said Board of Directors shall have the authority to levy such additional assessment or assessments as it shall deem to be necessary.

D. The Board of Directors of ASSOCIATION, in establishing said Annual Budget for operation, management and maintenance of the Project, shall include therein a sum to be collected and maintained as a reserve fund for replacement of COMMON ELEMENTS and LIMITED COMMON ELEMENTS, which reserve fund shall be for the purpose of enabling ASSOCIATION to replace structural elements and mechanical equipment constituting a part of the COMMON ELEMENTS and LIMITED COMMON ELEMENTS as well as the replacement of personal property which may constitute a portion of the COMMON ELEMENTS held for the joint use and benefit of all of the owners of all DWELLINGS. The amount to be allocated to such Reserve Fund for Replacements shall be established by said Board of Directors so as to accrue and maintain at all times a sum reasonably necessary to anticipate the need for replacement of said COMMON ELEMENTS and LIMITED COMMON ELEMENTS. The amount collected and allocated to the Reserve Fund for Replacements from time to time shall be maintained in a separate account by ASSOCIATION, although nothing herein contained shall limit ASSOCIATION from applying any monies in such Reserve Fund for Replacements to meet other needs or requirements of ASSOCIATION in operating or managing the Project in the event of emergencies, or in the event that the sums collected from the owners of DWELLINGS are insufficient to meet the then fiscal financial requirements of ASSOCIATION, but it shall not be a requirement

that these monies be used for such latter purposes, as a separate assessment may be levied therefor if deemed to be preferable by the Board of Directors of ASSOCIATION in the sole discretion of said Board of Directors.

E. The Board of Directors of ASSOCIATION, in establishing said Annual Budget for operation, management and maintenance of the Project, shall include therein a sum to be collected and maintained as a general operating reserve which shall be used to provide a measure of financial stability during periods of special stress when such sums may be used to meet deficiencies from time to time existing as a result of delinquent payment of assessments by owners of DWELLINGS as a result of emergencies or for other reason placing financial stress upon the ASSOCIATION. The annual amount allocated to such operating reserve and collected therefor shall not exceed 5% of the current annual assessment levied against the owners of all DWELLINGS and their DWELLINGS. Upon accrual in said operating reserve of an amount equal to 25% of the current annual assessment, no further payments shall be collected from the owners of DWELLINGS as a contribution to such operating reserve, unless such operating reserve shall be reduced below said 25% level, in which event, contributions to such operating reserve shall be included in the annual assessment so as to restore said operating reserve to an amount which will equal 25% of the current annual amount of said assessment.

F. All monies collected by ASSOCIATION shall be treated as the separate property of the said ASSOCIATION, and such monies may be applied by the said ASSOCIATION to the payment of any expense of operating and managing the CONDOMINIUM, or to the proper undertaking of all acts and duties imposed upon it by virtue of this Declaration of Condominium and the Articles of Incorporation and By-Laws of said ASSOCIATION and as the monies for any assessment are paid unto ASSOCIATION by any owner of a DWELLING the same may be co-mingled with the monies paid to the said ASSOCIATION by the other owners of DWELLINGS. Although all funds and other assets of ASSOCIATION, and any increments thereto or profits derived therefrom, or from the leasing or use of COMMON ELEMENTS, shall be held for the benefit of the members of ASSOCIATION, no member of said ASSOCIATION shall have the right to assign, hypothecate, pledge or in any manner transfer his membership interest therein, except as an appurtenance to his DWELLING. When the owner of a DWELLING shall cease to be a member of ASSOCIATION by reason of the divestment of his ownership of such DWELLING, by whatever means, ASSOCIATION shall not be required to account to such owner for any share of the funds or assets of ASSOCIATION, or which may have been paid to said ASSOCIATION by such owner, as all monies which any owner has paid to ASSOCIATION shall be and constitute an asset of the ASSOCIATION which may be used in the operation and management of CONDOMINIUM.

G. The payment of any assessment or installment thereof due to ASSOCIATION shall be in default if such assessment, or any installment thereof, is not paid unto ASSOCIATION, on or before the due date for such payment. When in default, the delinquent assessment or delinquent installment thereof due to ASSOCIATION shall bear interest at the rate of 8% per annum until such delinquent assessment or installment thereof, and all interest due thereon, has been paid in full to ASSOCIATION.

H. The owner or owners of each DWELLING shall be personally liable, jointly and severally, as the case may be, to ASSOCIATION for the payment of all assessments, regular or special, which may be levied by ASSOCIATION while such party or parties are owner or owners of a DWELLING in the CONDOMINIUM. In the event that any owner or

owners are in default in payment of any assessment or installment thereof owed to ASSOCIATION, such owner or owners of any DWELLING shall be personally liable, jointly and severally, for interest on such delinquent assessment or installment thereof as above provided, and for all costs of collecting such assessment or installment thereof and interest thereon, including a reasonable attorney's fee, whether suit be brought or not.

      I.  No owner of a DWELLING may exempt himself from liability for any assessment levied against such owner and his DWELLING by waiver of the use or enjoyment of any of the COMMON ELEMENTS, or by abandonment of the DWELLING, or in any other manner.

      J.  Recognizing that the necessity for providing proper operation and management of the Project entails the continuing payment of costs and expenses therefor, which results in benefit to all of the owners of DWELLINGS, and that the payment of such common expense represented by the assessments levied and collected by ASSOCIATION is necessary in order to preserve and protect the investment of the owner of each DWELLING, ASSOCIATION is hereby granted a lien upon such DWELLING and its appurtenant undivided interest in COMMON ELEMENTS and, if applicable, upon any exclusive right to use a parking space constituting LIMITED COMMON ELEMENTS which may be an appurtenance to any such DWELLING, which lien shall secure and does secure the monies due for all assessments now or hereafter levied against the owner of each DWELLING, which lien shall also secure interest, if any, which may be due on the amount of any delinquent assessments owing to ASSOCIATION, and which lien shall also secure all costs and expenses, including a reasonable attorney's fee, which may be incurred by ASSOCIATION in enforcing this lien upon said DWELLING and its appurtenant undivided interest in the COMMON ELEMENTS and LIMITED COMMON ELEMENTS. The lien granted to ASSOCIATION may be foreclosed in the State of Florida, and in any suit for the foreclosure of said lien, the ASSOCIATION shall be entitled to rental from the owner of any DWELLING from the date on which the payment of any assessment or installment thereof became delinquent and shall be entitled to the appointment of a Receiver for said DWELLING. The rental required to be paid shall be equal to the rental charged on comparable type of Dwelling Units in Boca Raton, Florida. The lien granted to the ASSOCIATION shall further secure such advances for taxes, and payments on account of superior mortgages, liens or encumbrances which may be required to be advanced by the ASSOCIATION in order to preserve and protect its lien, and the ASSOCIATION shall further be entitled to interest at the rate of 8% per annum on any such advances made for such purpose. All persons, firms or corporations who shall acquire, by whatever means, any interest in the ownership of any DWELLING, or who may be given or acquire a mortgage, lien or other encumbrance thereon, is hereby placed on notice of the lien granted to ASSOCIATION, and shall acquire such interest in any DWELLING expressly subject to such lien.

      K.  The lien herein granted unto ASSOCIATION shall be effective from and after the time of recording in the Public Records of Palm Beach County, Florida a claim of lien stating the description of the DWELLING encumbered thereby, the name of the record owner, the amount due and the date when due, and the lien shall continue in effect until all sums secured by said lien, as herein provided, shall have been fully paid. Such claims of lien shall include only assessments which are due and payable when the claim of lien is recorded, plus interest, costs, attorney's fees, advances to pay taxes and prior encumbrances and interest thereon, all as above provided. Such claims of lien shall be signed and verified by an officer or agent of the ASSOCIATION. Upon full payment of all sums secured by such claim of lien, the same shall be satisfied of record. The

claim of lien filed by the ASSOCIATION shall be subordinate to the lien of any mortgage or any other lien recorded prior to the time of recording of the ASSOCIATION'S Claim of Lien, except that the lien of the ASSOCIATION for Tax or Special Assessment advances made by ASSOCIATION where any taxing authority having jurisdiction levies any Tax or Special Assessment against the CONDOMINIUM as an entirety instead of levying the same against each DWELLING and its appurtenant undivided interest in COMMON ELEMENTS, shall be prior in lien, right and dignity to the lien of all mortgages, liens and encumbrances, whether or not recorded prior to the ASSOCIATION'S Claim of Lien therefor, and the ASSOCIATION'S claim of lien for collection of such portion of any Tax or Special Assessment shall specifically designate that the same secures an assessment levied pursuant to Article XXV of this Declaration of Condominium.

In the event that any person, firm or corporation shall acquire title to any DWELLING and its appurtenant undivided interest in COMMON ELEMENTS by virtue of any foreclosure or judicial sale, such person, firm or corporation so acquiring title shall only be liable and obligated for assessments as shall accrue and become due and payable for said DWELLING and its appurtenant undivided interest in COMMON ELEMENTS subsequent to the date of acquisition of such title, and shall not be liable for the payment of any assessments which were in default and delinquent at the time it acquired such title, except that such person, firm or corporation shall acquire such title subject to the lien of any assessment by ASSOCIATION representing an apportionment of Taxes or Special Assessment levied by taxing authorities against the CONDOMINIUM in its entirety. In the event of the acquisition of title to a DWELLING by foreclosure or judicial sale, any assessment or assessments as to which the party so acquiring title shall not be liable shall be absorbed and paid by all owners of all DWELLINGS as a part of the common expense, although nothing herein contained shall be construed as releasing the party liable for such delinquent assessment from the payment thereof or the enforcement of collection of such payment by means other than foreclosure.

   L. Whenever any DWELLING may be leased, sold or mortgaged by the owner thereof, which lease or sale shall be concluded only upon compliance with other provisions of this Declaration of Condominium, ASSOCIATION, upon written request of the owner of such DWELLING, shall furnish to the proposed lessee, purchaser or mortgagee, a statement verifying the status of payment of any assessment which shall be due and payable to ASSOCIATION by the owner of such DWELLING. Such statement shall be executed by any Officer of the ASSOCIATION and any lessee, purchaser or mortgagee may rely upon such statement in concluding the proposed lease, purchase or mortgage transaction, and ASSOCIATION shall be bound by such statement.

In the event that a DWELLING is to be leased, sold or mortgaged at the time when payment of any assessment against the owner of said DWELLING and such DWELLING due to ASSOCIATION shall be in default (whether or not a claim of lien has been recorded by the ASSOCIATION) then the rent, proceeds of such purchase or mortgage proceeds, shall be applied by the lessee, purchaser or mortgagee first to payment of any then delinquent assessment or installment thereof due to ASSOCIATION before the payment of any rent, proceeds of purchase or mortgage proceeds to the owner of any DWELLING who is responsible for payment of such delinquent assessment.

In any voluntary conveyance of a DWELLING, the Grantee shall be jointly and severally liable with the Grantor for all unpaid assessments against Grantor made prior to the time of such voluntary conveyance, without

24.

OFFICIAL RECORDS 1643 PAGE 1285

prejudice to the rights of the Grantee to recover from the Grantor the amounts paid by the Grantee therefor.

Institution of a suit at law to attempt to effect collection of the payment of any delinquent assessment shall not be deemed to be an election by ASSOCIATION which shall prevent its thereafter seeking enforcement of the collection of any sums remaining owing to it by foreclosure, nor shall proceeding by foreclosure to attempt to effect such collection be deemed to be an election precluding the institution of suit at law to attempt to effect collection of any sum then remaining owing to it.

## XXIX

### TERMINATION

Notwithstanding anything to the contrary contained in Article XXIV hereof, in the event of fire or other casualty or disaster which shall totally demolish the CONDOMINIUM Building or which shall so destroy said CONDOMINIUM Building as to require more than two-thirds of said Building, as determined by the Board of Directors of ASSOCIATION, to be reconstructed, then this Declaration of Condominium and the Plan of Condominium Ownership established herein shall terminate, unless all of the owners of all DWELLINGS agree that said CONDOMINIUM Building shall be reconstructed, or unless any policy or policies of casualty insurance which may cover the damage or destruction of said Building requires the reconstruction thereof as a condition precedent to the payment of insurance proceeds under such policy or policies, but notwithstanding the fact that the owners of all DWELLINGS agree to reconstruct said Building, or if such policy or policies of casualty insurance require the same to be reconstructed, this Declaration of Condominium and the Plan of Condominium Ownership established herein shall still be terminated if there exists any regulation or order of any governmental authority having jurisdiction of the Project which may then prevent the reconstruction of said CONDOMINIUM Building, although nothing herein contained shall be construed as releasing or in any manner changing any obligation which may be owed to ASSOCIATION, for itself and for the benefit of the owners of all DWELLINGS, under any insurance policy or policies then existing.  If, as above provided, this Declaration of Condominium and the Plan of Condominium Ownership established herein is to be terminated, then a Certificate of a Resolution of the Board of Directors of ASSOCIATION to said effect and notice of the cancellation and termination hereof shall be executed by the President and Secretary of ASSOCIATION in recordable form, and such instrument shall be recorded in the Public Records of Palm Beach County, Florida.  Upon termination of this Declaration of Condominium and the Plan of Condominium Ownership established herein, all of the owners of DWELLINGS shall be and become tenants in common as to the ownership of the real property herein described, and any then remaining improvements thereon, the undivided interest in such real property and remaining improvements held by the owner or owners of each DWELLING to be the same as the undivided interest in COMMON ELEMENTS which was formerly appurtenant to such DWELLING and the lien of any mortgage or other encumbrance upon each DWELLING shall attach, in the same order of priority, to the percentage of undivided interest of the owner of a DWELLING in the property and then remaining improvements as above provided.  Upon termination of this Declaration of Condominium and the Plan of Condominium Ownership established herein, the Insurance Trustee shall distribute any insurance indemnity which may be due under any policy or policies of casualty insurance to the owners of the DWELLINGS and their mortgagees, as their respective interests may appear, such distribution to be made to the owner or owners of each DWELLING in accordance with their then undivided interest in the real property and remaining improvements as hereinbefore provided.  The assets of ASSOCIATION, upon termination of the Plan of Condominium

25.    OFFICIAL RECORD 1643 PAGE 1286