UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:21-cv-60456-WPD

GREGORY HAROLD POPE, and
MICHELLE BERNADETTE POPE,

       Plaintiffs,

v.

KAYE BENDER REMBAUM, P.L.,

       Defendant.
_____/

### KAYE BENDER REMBAUM P.L.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

**COMES NOW** the Defendant, KAYE BENDER REMBAUM, P.L. (hereinafter "KBR"), by and through its undersigned counsel, and pursuant to Rule 12 of the Federal Rules of Civil Procedure, hereby files this Motion to Dismiss Plaintiffs' First Amended Complaint, and in support thereof states:

#### I.    FACTUAL BACKGROUND

1. This lawsuit pertains to claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (hereinafter "FDCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72 *et seq.* (2020) (hereinafter "FCCPA").

2. Plaintiffs are owners of Unit #1-2 of the SABAL RIDGE APARTMENT ASSOCIATION, INC. (hereinafter "the Association").

3. The Association is the governing body for the Sabal Ridge Apartment Condominium, a

condominium formed pursuant to Florida Statutes Chapter 718 *et seq.*

4. Said Association is governed by the Bylaws and Declaration of Condominium recorded in the Public Records of Palm Beach County, Florida.

5. Defendant is a law firm retained by the Association for attorney services on a variety of community related matters, including the collection of regular and special maintenance assessments from delinquent Unit owners.

6. In response to a written demand for debt verification sent from Plaintiff's prior counsel, on March 9, 2020 Defendant delivered to said counsel a communication by both facsimile and email, which communication attached and incorporated a letter of explanation and other documents that included ledgers and official records of the Association, verifying the balance sought by the Defendant. A complete copy of the Defendant's March 9, 2019 communication is attached hereto and incorporated herein as "Composite Exhibit "A".

7. Thereafter, the parties, solely through counsel, exchanged email correspondence and ultimately agreed to a settlement of collection on the account for both the claimed regular and special maintenance assessments.

8. Pursuant to said negotiation, and nearly one year after the March 9th communication, Plaintiffs through their counsel, delivered a settlement payment to Defendant on February 3, 2021 in the sum of $18,709.50. Copies of the settlement check and cover letter are attached hereto as Composite Exhibit "B".

## II.   SUMMARY OF THE ARGUMENTS

9. This Court should dismiss the FDCPA and FCCPA claims against the Defendant with

prejudice because Plaintiffs have not, and will not, be able to state a claim for which relief can be granted under any set of facts, for the foregoing reasons:

- Plaintiffs have failed to state a claim for relief under the FDCPA in **Count I, II, III and IV.** First, the Plaintiffs fail to invoke the Article III subject matter jurisdiction of this Honorable Court, as they do not allege any direct harm or injury as a result of the alleged missing technical disclosure language on an attorney-to-attorney letter that followed numerous email communications between the same counsel. Additionally, the document Plaintiffs attach as an exhibit to the First Amended Complaint is demonstrably incomplete. By comparison, Defendant has attached a complete version of the subject communication as Composite Exhibit "A" herein (March 9, 2020 letter), with all referenced documents, as well as the email transmittal form by which the communication to Plaintiffs was properly sent. Importantly, Defendant clearly states on the email:

    > **This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.** (Emphasis added).

    Because the complete communication related to the exhibit attached to Plaintiffs' First Amended Complaint unequivocally demonstrates that Plaintiffs' counsel and Plaintiffs were provided with the disclosure required by 15 U.S.C. § 1692g(a)(3) - (5) and § 1692e(11), this Honorable Court should apply the "competent attorney" standard of review. Plaintiffs' exhibits therefore conflict with the allegations in their Complaint. In such event, the exhibits control. Thus, Plaintiffs have failed to state

a cause of action under **Count I** of the Complaint for both jurisdictional and basic factual reasons.

- Plaintiffs have failed to state a claim for relief under both the FDCPA and FCCPA in **Counts II, III, and IV.** Defendant's collection of the underlying debt was at all times authorized by both Florida Law and the controlling Declaration of Condominium. In the event of an unpaid maintenance assessment, Florida Law unequivocally provides condominiums the authority to charge interest on a delinquent assessment installment, and to apply any payment received to accrued interest, costs, and attorneys fees *before* credit to any underlying principal installment. This procedure is to be followed *regardless* of any restrictive endorsement placed on a unit owner's payment. In addition, Article XXVIII of the governing Declaration of Condominium clearly and specifically authorizes the charge of interest on late installments, as well as the filing of a Claim of Lien and collection of reasonable attorneys fees and costs incurred therefrom. Thus, Plaintiffs have failed to state a cause of action under both the FDCPA (Counts II & III) and the FCCPA (Count IV), and these Counts must be dismissed.

### III. LEGAL STANDARDS GOVERNING MOTIONS TO DISMISS

10. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matters, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The pleading standard "does not require 'detailed factual allegations',

but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679.

11. Rule 12(b)(6) FRCP states dismissal of a Complaint is appropriate "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hirshon v. King & Spotting, 467 U.S. 69, 73 (1984); *See also*, Hazel v. School Board of Dade County, 7 F.Supp.2d 1349, 1352 (S.D. Fla. 1998)(holding that a motion to dismiss will be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief"); Mallo v. Public Health Trust of Dade County, 88 F.Supp. 1376 (S.D. Fla. 2000). A motion to dismiss for failure to state a claim tests the sufficiency of the complaint. Hazel, 7 F.Supp.2d at 1349.

12. Importantly, a complaint must allege facts properly setting forth the essential elements of a cause of action. Hazel at 1352. Dismissal of a complaint is appropriate on the basis of a dispositive issue of law, or when there is no necessity to construe factual allegations contained within the complaint. Marshall Cty Bd. Of Ed. v. Marshall Cty. Gas Dist., 992 F.2d 1171 (11th Cir. 1993). If the defendant demonstrates beyond doubt that the plaintiff can prove no set of fact to support his claim, then a motion to dismiss should be granted. Mallo, 88 F.Supp. at 1376.

13. In addition, documents attached to the complaint may be considered as part of the pleadings

in ruling on a motion to dismiss. <u>Reese v. Ellis, Painter, Ratterree & Adams, LLP</u>, 678 F.3d 1189, 1205 (11th Cir. 2007). *Other documents may also be considered if they are central to or referenced in the complaint, or judicially noticed.* <u>LaGrasta v. First Union Sec. Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004)(citing Fed. R. Civ. P. 10(c)). (Emphasis added).

## IV. ARGUMENTS

### 1. *COUNTS I THROUGH IV SHOULD BE DISMISSED BECAUSE THE FIRST AMENDED COMPLAINT FAILS TO PROPERLY INVOKE THE ARTICLE III SUBJECT MATTER JURISDICTION OF THIS HONORABLE COURT.*

#### A. **Plaintiffs' First Amended Complaint fails to properly allege concrete and particularized injury.**

14. The gravamen of Plaintiffs' claim in Counts I, II, III and IV of the First Amended Complaint is they suffered "harm" due to : (1) the March 9, 2020 attorney-to-attorney communication that allegedly failed to include the "magic words" of disclosure required pursuant to § 1692e(11), and (2) the amounts sought were somehow not authorized by the governing Declaration of Condominium and Florida Law.

15. In <u>Spokeo v. Robins</u>, 136 S. Ct. 1540, 1548 (2016), the United States Supreme Court found that plaintiff's pleading of a mere technical violation of the Fair Credit Reporting Act, without a showing of adequate harm failed to trigger the Article III standing needed to invoke the Court's subject matter jurisdiction (" . . . a bare procedural violation, divorced from any concrete harm, {does not} satisfy the injury-in-fact requirement of Article III").

16. The test to determine Article III standing relies on three elements:

> The plaintiff must have: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant,

and (3) that is likely to be redressed by a favorable judicial outcome. Id. at 1546.

17. Moreover, "injury in fact is a constitutional requirement and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." Id. at 1547.

18. The Seventh Circuit Court of Appeals just recently applied the Spokeo ruling to its review of a technical violation of § 1692c of the FDCPA in the case of Pennel v. Global Trust Management, 990 F. 3d 1041 (7th Cir. 2021). There, the plaintiff claimed the creditor sent a dunning letter directly to her in contravention to earlier written instructions from the plaintiff directing all future communications be sent to her counsel.

19. However, the only injury alleged by the consumer was for "stress and confusion". The Plaintiff merely tracked the statutory language for harm found in § 1692 without any further elaboration ("The only injuries Pennel included in her complaint were stress and confusion, and those do not suffice for standing"). Id. at 1045.

20. The Court noted: "The Plaintiff must establish standing at the time the suit is filed and cannot manufacture standing afterwards." Id. at 1044.

21. In applying Spokeo, the Seventh Circuit rejected the plaintiff's *de minimus* harm allegation of "stress and confusion" as inadequate despite what appears to be automatic award of statutory damages in § 1692:

> ... a plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a right and purports to authorize a suit to vindicate it. Article III standing requires a **concrete injury** even in the context of a statutory violation."

Spokeo, 136 S.Ct. at 1543. (Emphasis added).

22. Ultimately, the Seventh Circuit held that by alleging only that a debt collector's dunning letter caused her stress and confusion, the consumer merely pointed to a statutory violation of the Act, which was insufficient to satisfy the concreteness element of the injury-in-fact requirement for Article III standing. The Court found that the consumer failed to show that receiving the debt collector's notice led her to change her cause of action or put her in harm's way, and therefore affirmed the District Court's dismissal of the Complaint.

23. Moreover, even though the consumer Pennel alleged in the her supplemental memorandum on appeal that the dunning letter invaded her privacy, that argument would not be entertained in analyzing standing, as she did not allege any such injury in her operative complaint. Pennel, 990 F.3d at 1045. *See also*, Brunett v. Convergent Outsourcing, Inc., 982 F. 3d 1067, 1069 ("Brunett tells us that the letter was 'intimidating as well as 'confusing'. Our analysis is the same. Attaching an epithet such as "intimidation" to a letter does not show that injury occurred. Talk is cheap, but where is the concrete harm? That's what the Constitution requires, and Brunett does not allege any."); United States v. All Funds on Deposit with R.J. O'Brien & Assoc., 783 F. 3d 607, 616 (7th Cir. 2015) ("purely psychological harm" does not establish Article III standing).

24. In Hagy v. Demers & Adams, 882 F.3d 616 (6th Cir. 2018), the Sixth Circuit Court of Appeals was faced with a similar situation as the case at bar. In that case, the attorney delivering a settlement letter on behalf of a creditor failed to include the "magic words" disclosure required pursuant to the FDCPA. As in the case at bar, the Plaintiff in Hagy

alleged the mere technical failure to include the statutory disclosure language automatically provided a claim for damages.

25. The Sixth Circuit reasoned that creation by Congress of a right to "automatic" statutory damages did not trump the "irreducible constitutional minimum that requires [Plaintiffs] to show: (1) particular and concrete injury; (2) caused by [Defendant]; and (3) redressable by the courts." Id. at 720.

26. Thus, as the Hagy Court reasoned, "we have yet to take a position" on the lack of disclosure language in the attorney letter as "Article III of the Constitution does not authorize federal courts to decide theoretical questions." Id.

27. In the case at bar, Plaintiffs have failed to allege any actual *concrete* harm as it relates to the alleged failure to include the statutory disclosure language in the March 9, 2020 attorney-to-attorney communication, rendering at minium, Count I theoretical in nature and subject to dismissal for failure to establish Article III standing.

28. In fact, the only allegations as to harm in the First Amended Complaint are found in Paragraphs 44 through 46. The harm alleged in these paragraphs is solely targeted to the dispute over the legitimacy of the account charges, and the negotiated settlement payment delivered thereon. These allegations do not state that the alleged failure to include the technical words of disclosure on the March 9, 2020 letter to Plaintiff counsel were deceitful, or created any harm. Nor do they allege the Plaintiffs were mislead as to the amounts sought, or that they would have otherwise taken a different course of action in response.

29. Additionally, the only harm alleged as damages in Paragraph 44 is based on a fundamentally

flawed analysis of Florida Law and the governing Declaration that *do* authorize the disputed charges of interest and attorneys fees.

30. Paragraphs 45 and 46 further allege "actual" damages of "wasted time", "inflicted frustration, pain, confusion, and distrust, as well as emotional turmoil" and describe such conditions as "concrete harm".

31. However, as demonstrated from the Supreme Court in Spokeo and the Circuit Court opinions cited herein, "talk is cheap, but where is the concrete harm?". Brunett 983 F. 3d at 1069. The Plaintiffs in the case at bar fail to allege how this litany of adjectives materially harmed them in any way, nor have they suggested that they would have acted differently in the absence of such "violations".

32. Plaintiff's allegations of harm in the First Amended Complaint are therefore pure conclusions and fail to rise to the specific level of damages needed to sustain a claim under § 1692 of the FDCPA. Additionally, the Courts have specifically rejected the exact types of harm alleged by Plaintiffs as being actionable. Brunett, 982 F. 3d at 1069.

33. As to Count I in the First Amended Complaint, there is a total absence of any claim of direct harm as a result of the alleged failure to include the statutory disclosure language, and this Honorable Court must therefore dismiss the same.

34. As to Counts II, III, and IV, the Plaintiffs use of bare conclusions of "wasting time" or "emotion turmoil" without elaborating how such conditions actually caused *concrete* harm renders the pleading inadequate as a matter of law.

35. Because the Plaintiffs have failed to establish standing, this Honorable Court must dismiss

Counts I, II, III, and IV due to a lack of adequate Article III subject matter jurisdiction.

### B. Assuming *arguendo* the Plaintiffs have plead adequate harm, taken as a whole, the subject communication includes the mandatory disclosure language required by the FDCPA.

36. Pursuant to LaGrasta cited above, while reviewing a Motion to Dismiss, this Honorable Court is entitled to see the full and complete copy of the March 9, 2020 communication that includes all other papers to which the communication was attached and delivered to counsel for the Plaintiffs, including the email transmittal form. Said complete documents are central to the Plaintiffs' claim, and are indisputably referenced therein.

37. Exhibit "A" attached hereto is a copy of the Defendant's complete communication correspondence constituting the written verification of the amounts sought in the initial collection letter sent in this matter.

38. While the faxed copy of the March 9, 2019 attorney-to-attorney letter arguably does not include the "magic" FDCPA words of disclosure, said letter was a copy of the overall communication emailed to Defense counsel, which email very clearly included the required language.

39. In fact, said letter was delivered to Plaintiffs' counsel both through email and facsimile. Said email did not just include the letter, but also contained the required disclosure.

40. The attached Exhibit "A" includes a *full* correct copy of the email communication sent to the Defendant *in pari materia* with the faxed verification letter. The face of the email transmittal page clearly contains the required disclosure:

> **This communication from a debt collector is an attempt to collect a debt and any information obtained will be used**

**for that purpose.** (Emphasis added).

41. Thus, from the face of the Complaint, this Honorable Court can determine that Plaintiffs' allegation of failure to disclose under the FDCPA is obviously factually incorrect, and that Count I should be dismissed.

> **C. Plaintiff's reliance on the 11th Circuit's <u>Bishop</u> case is misplaced as the March 6, 2020 attorney-to-attorney letter was not an initial communication, and should therefore be reviewed under the "competent attorney" standard.**

42. Plaintiff contends generally in Paragraphs 48 and 49 of the First Amended Complaint that the March 9, 2020 attorney-to-attorney "Collection Letter" is a communication that requires inclusion of the "magic words" pursuant to the case of <u>Bishop v. Ross Earle & Bonan, P.A.</u>, 817 F.3d 1268 (11th Cir. 2016).

43. However, the facts of <u>Bishop</u> are different from the case at bar. In <u>Bishop</u>, the Defendant failed to include certain words in the *initial communication* which requires the full elaboration of debtors rights. The debt collector's omission (failure to state that a dispute could be sent in writing) was viewed as deceptive, and therefore material enough for the Court to apply the "least sophisticated consumer" standard to sustain the alleged FDCPA violation.

44. The <u>Bishop</u> Court distinguished the facts of that case with those from other Circuits that have applied the more lenient "competent lawyer" standard that states the failure to include § 1692e disclosure language in a subsequent attorney-to-attorney communication does not rise to the level of a violation of the FDCPA.

45. <u>Bishop</u> cites to the Seventh Circuit Court of Appeal's ruling in <u>Evory v. RJM Acquisitions</u>

Case 0:21-cv-60456-WPD   Document 10   Entered on FLSD Docket 04/21/2021   Page 13 of 19

*Gregory & Michelle Pope v. Kaye Bender Rembaum, P.L.*
*Motion to Dismiss First Amended Complaint*
*Case No.: 0:21-cv-60456-WPD*
*Page 13 of 19*

Funding, 505 F. 3d 769 (7th Cir. 2007) as the "seminal" case that applies the "competent lawyer" standard analysis to a technical disclosure violation alleged under § 1692e.

46. In Evory, the attorney-to-attorney to communication at issue was a settlement letter that failed to state the shorter disclosure language required by § 1692e(11) to be included on *subsequent* communications.

47. In finding that the failure to state the § 1692(e)11 disclosure did *not* rise to the level of a violation of the FDCPA, the Evory Court stated:

> We are exceedingly doubtful that any lawyer involved in representing debtors would be deceived by the settlement offers made by debt collectors, and doubt therefore that any cases based on such offers could survive summary judgment or even a motion to dismiss were the offer directed to the consumer's lawyer rather than to the consumer. This illustrates our earlier point about the importance of distinguishing between lawyers and unsophisticated consumers in applying section 1692e. Id. at 774.

48. The 11th Circuit in Bishop reasoned: "Evory appears to limit the 'competent lawyer' standard to misleading and deceptive behavior; misrepresentations are elevated under the familiar 'least sophisticated consumer standard'". Bishop, 817 F. 3d at 1273.

49. The Bishop opinion also cites to Dikeman v. National Educators, Inc., 81 F. 3d 949 (10th Cir. 1996), where the § 1692e(11) violation alleged was quite similar to the case at bar. There, the Defendant failed to include the "magic words" in a *verbal* response to the debtor's attorney. The Tenth Circuit Court of Appeals stated:

> Accordingly, we hold that the fact of the debt verification and its content, viewed in context, was adequate to disclose to an attorney hired to represent the debtor that the debt collector was attempting to collect a debt and that any information

    obtained would be used for that purpose within the meaning of § 1692e(11). A disclosure pursuant to § 1692e(11) by verbal statement would be a pointless formality and is not required in such a situation.

50. In fact, the Bishop Court *only* declined to extend the Evory and Dikeman "competent attorney" standard to a different scenario where the material omission from the *initial* communication "did not inform Bishop that she must dispute her debt 'in writing' to trigger verification rights under § 1692g(b)." Bishop, 817 F. 3d at 1273. The 11th Circuit found such an omission was so material as to be deceptive, thus triggering the harsher "least sophisticated consumer" standard.

51. Contrary to the scenario in Bishop, the alleged failure to properly include § 1692e "magic words" in the case at bar is far similar to the facts found in Evory and Dikeman. The March 9, 2020 letter at issue was a *subsequent* communication that resulted from months of attorney-to-attorney emails, telephone conferences, and letters. The letter was also emailed contemporaneously with the fax copy, and the email transmittal *did* include the § 1692e(11) disclosure language.

52. When applying the Bishop standard, the alleged lack of disclosure language on the actual March 9th fax letter was so immaterial that it could never be construed by any fact finder to be "misleading" or "deceptive".

53. As such, this Honorable Court should apply the "competent attorney" standard when analyzing the lack of § 1692e(11) language Plaintiffs allege on the face of the First Amended Complaint and its exhibit, to easily determine beyond any doubt that Count I is factually and legally flawed, and should be dismissed with prejudice.

2. **COUNTS II, III, & IV ALSO FAIL TO STATE A CAUSE OF ACTION BECAUSE DEFENDANT ENGAGED IN COLLECTION OF AMOUNTS CLEARLY AUTHORIZED BY CONTRACT AND STATUTE.**

54. Defendant's full communication, including the letter of March 9, 2020 (Composite Exhibit "A") is a proper verification of all contested debits and credits on the account, and includes Association records supporting both the regular and special maintenance assessment installments charged thereon.

55. Without factual specificity, Plaintiffs allege in Counts II, III, and IV that despite being provided a comprehensive balance explanation with supporting documentation in the March 9, 2020 verification letter, the amount sought is nevertheless somehow "exceedingly unlawful" (¶56, 59), "not explicitly authorized by the Agreement underlying the Consumer Debt or explicitly authorized by statute" (¶61), and that Defendant "asserted a right which it knew did not exist" (¶ 66).

56. In K.R. Exchange Services, Inc., 48 So. 3d 889, 892 (Fla. 3DCA 2010), the Third District Court of Appeal found: "To withstand dismissal, however, a plaintiff must allege more than the 'naked legal conclusion' . . . ."

57. Florida's Condominium Act, Chapter 718, provides primary authorization for the charges sought against, and paid for, by the Plaintiffs. Pursuant to Fla. Stat. § 718.116 (3) (2020):

> Assessments and installments on assessments which are not paid when due bear *interest* at the rate provided in the declaration, from the due date until paid. The rate may not exceed the rate allowed by law, and if no rate is provided in the declaration, interest accrues at the rate of 18 percent per year. . . . Any payment received by an association must be applied first to any interest accrued by the association, then to any administrative late fee, then to any costs and reasonable

*Gregory & Michelle Pope v. Kaye Bender Rembaum, P.L.*
*Motion to Dismiss First Amended Complaint*
Case No.: 0:21-cv-60456-WPD
Page 16 of 19

attorneys fees incurred in collection, and then to the delinquent assessment. The foregoing is applicable notwithstanding any purported accord and satisfaction, or any restrictive endorsement, designation, or instruction placed on or accompanying a payment. The preceding sentence is intended to clarify existing law. (Emphasis added).

58. In accord with Chapter 718, Article XXVII of the Declaration of Condominium governing the subject property and Parties, recorded in the Public Records of Palm Beach County provides, in relevant parts:

> G. The payment of any assessment or installment thereof due to ASSOCIATION shall be in default if such assessment, or any installment thereof, is not paid unto ASSOCIATION, on or before the due date for such payment. When in default, the delinquent installment there due to ASSOCIATION shall bear *interest* at the rate of 8% per annum until such delinquent assessment or installment thereof, and all interest due thereon, has been paid in full to ASSOCIATION. (Emphasis added).

> H. The owner or owners of each DWELLING shall be personally liable, jointly and severally, as the case may be, to ASSOCIATION for the payment of all assessments, regular and special, which may be levied by ASSOCIATION while such parties are owner or owners of a DWELLING in the CONDOMINIUM. In the event that any owner or are in default in payment of any assessment or installment thereof owed to ASSOCIATION, such owner or owners of any DWELLING shall be personally liable, jointly and severally, for interest on such delinquent assessment or installment thereof and interest thereon, including a reasonable attorney's fee, whether suit be brought or not.

\* \* \* \*

> K. The lien granted unto ASSOCIATION . . . shall include only assessments which are due and payable when the claim of lien is recorded, plus *interest*, costs, attorney's fees, advances to pay taxes . . . all as provided. (Emphasis added).

Case 0:21-cv-60456-WPD   Document 10   Entered on FLSD Docket 04/21/2021   Page 17 of 19

*Gregory & Michelle Pope v. Kaye Bender Rembaum, P.L.*
*Motion to Dismiss First Amended Complaint*
Case No.: 0:21-cv-60456-WPD
Page 17 of 19

59. The foregoing excerpts from both the publicly recorded Declaration and Chapter 718, Florida Statutes, fully substantiate the contractual and statutory legal authority for the Defendant law firm to advance collection of the regular and special maintenance assessments and any interest thereon collected by agreement of the Parties in this case. They are referenced in multiple paragraphs of the Complaint, are central to the Plaintiffs' claims, and, as publicly recorded documents, are subject to judicial notice by this Honorable Court. A copy of Article XXVII of the governing Declaration is attached hereto and incorporated herein as Exhibit "C".

60. In fact, the account detail included in the March 9, 2019 communication from Defendant demanded amounts of interest, costs, and attorneys fees directly contemplated by multiple sections of the Declaration. Argument to the contrary is bogus.

61. Because the Plaintiffs are not challenging the actual computation of the amounts of the monies collected, there is no debate as to the "reasonableness" of the attorneys fees or costs charged, nor the specific calculation of interest according the Declaration.

62. Additionally, despite their agreement to the settlement amount, Plaintiffs' alleged "payment under protest" of the $18,709.54 is of no import. As cited herein, Chapter 718, Florida Statutes (2020), specifically rejects the notion of payment of duly owed amounts to an Association with a restrictive endorsement or similar words of limitation.

63. Plaintiffs' delivery of the mutually negotiated sum to Defendant, regardless of the meaningless words "payment under protest" stated in the cover letter (but notably *not* on the actual check), acted as full settlement of disputes between the Plaintiffs and the Association,

Case 0:21-cv-60456-WPD   Document 10   Entered on FLSD Docket 04/21/2021   Page 18 of 19

*Gregory & Michelle Pope v. Kaye Bender Rembaum, P.L.*
*Motion to Dismiss First Amended Complaint*
*Case No.: 0:21-cv-60456-WPD*
*Page 18 of 19*

and did not otherwise confer liability upon the Defendant law firm.

64. Plaintiffs' Complaint therefore does not present any facts actionable under the FDCPA or FCCPA against the Defendant for any collection conduct "not authorized by law" and is rather a series of "naked legal conclusions" unsupported by even the most basic of facts, requiring dismissal. K.R. Exchange, 48 So. 3d at 892.

65. Based on the foregoing "naked conclusions" and obvious supporting contractual and statutory authority for the collection of interest, costs, and attorneys fees incurred in the course of collection of regular and special assessment installments, Counts II, III, and IV must be dismissed accordingly.

## V. CONCLUSION

66. This Honorable Court should dismiss the FDCPA and FCCPA claims against the Defendant with prejudice. Plaintiffs have failed to allege proper Article III standing. Additionally, the Defendant has demonstrated both appropriate disclosure compliance, asserted debts secured with lawful authority and facts derived directly from the Complaint and exhibits attached thereto. These facts cannot be disputed and leave the Court with no doubt that the Plaintiffs are unable to prove their claim.

**WHEREFORE**, Defendant Kaye Bender Rembaum P.L. respectfully requests this Honorable Court enter an Order granting this Motion to Dismiss First Amended Complaint with prejudice, awarding attorney's fees and costs, and for any additional relief this Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of April, 2021, a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the Court via CM/ECF, which will send notice of electronic filing to all counsel of record. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the service list below in the manner specified, either via transmission of notice of electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically notices of filing.

BY: _____
STUART M. SMITH, ESQ.
Florida Bar No: 9717
Email: ssmith@kbrlegal.com
GERARD S. COLLINS
Florida Bar No: 738050
Email: gcollins@kbrlegal.com
1200 Park Central Boulevard South
Pompano Beach, Florida 33064
(954) 928-0680 - Phone
(954) 772-0319 - Fax