UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:21-cv-60456-WPD

**GREGORY HAROLD POPE** and
**MICHELLE BERNADETTE POPE**,

    Plaintiffs,

v.

**KAYE BENDER REMBAUM, P.L.**,

    Defendant.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Plaintiff Gregory Harold Pope and Plaintiff Michelle Bernadette Pope (collectively, the "Plaintiffs") submit this Response in Opposition to the Motion to Dismiss [D.E. 24] filed by Defendant Kaye Bender Rembaum, P.L. ("Defendant") with respect to Plaintiffs' Second Amended Complaint [D.E. 19].

## 1.   BACKGROUND

1. Plaintiff commenced this action on February 26, 2021. D.E. 1. The operative complaint, the Second Amended Complaint [D.E. 19] (the "SAC"), was filed on May 28, 2021. D.E. 19. As set forth in greater detail in the SAC, Plaintiffs sued Defendant for multiple violations of the Fair Debt Collection Practices Act ("FDCPA"), violation of the Florida Consumer Collection Practices Act ("FCCPA"), and Florida common law invasion of privacy. Defendant filed its Motion to Dismiss [D.E. 24] the SAC on June 25, 2021. D.E. 24.

2. Defendant is a debt collector hired by Sabal Ridge Apartment Association, Inc. SAC at ¶¶ 10-11. Sabal Ridge Apartment Association, Inc. (the "Creditor"), is the original and current creditor of the *ever-changing* debt, *see generally* SAC at ¶¶ 12-13, (collectively, the "Consumer Debt") that Defendant repeatedly, and wrongfully, sought to collect from Plaintiffs. SAC at ¶ 14. As detailed in the SAC, "each of the various amounts that Defendant sought to collect from Plaintiffs were not owed by Plaintiffs and/or were already paid by Plaintiffs at the time Defendant attempted to collect said amounts." SAC at ¶ 23.

**1.1    THE SECOND AMENDED COMPLAINT**

3.    With respect to the nature of Plaintiffs' claims, **COUNT 1** advances FCCPA based claims, *see* SAC at ¶¶ 94-101, **COUNT 2** *through* **COUNT 10** advances FDCPA based claims, *see* SAC at ¶¶ 102-138, and **COUNT 11** advances a Florida common law claim of "public disclosure of private facts," of which is also referred to as "the dissemination of truthful private information which a reasonable person would find objectionable." *See* SAC at ¶¶ 139-145.

4.    **COUNT 1** *through* **COUNT 9** of the SAC arise from written communications Defendant sent in an attempt to collect the Consumer Debt. *See generally* SAC at ¶¶ 94- 134.

5.    Attached to the SAC as Exhibit "A" [D.E. 19-1] is the letter, dated November 15, 2019, that Defendant sent Plaintiffs in an attempt to collect the Consumer Debt ("Letter #1"). SAC at ¶ 24. The written communication that gives rise to **COUNT 1** (*violation of § 559.72(9) of the FCCPA*) is Letter #1.

6.    Attached to the SAC as Exhibit "C" [D.E. 19-3] is the letter, dated March 9, 2020, that Defendant sent Plaintiffs in an attempt to collect the Consumer Debt ("Letter #2"). SAC at ¶ 39. The written communication that gives rise to **COUNT 2** (*violation of §§ 1692e and 1692g(a) of the FDCPA*), **COUNT 3** (*violation of § 1692e(11) of the FDCPA*), **COUNT 4** (*violation of §§ 1692e(2)(A) of the FDCPA*), a portion of **COUNT 5** (*violation of § 1692e(2)(B) of the FDCPA*), and **COUNT 6** (*violation of § 1692e(10) of the FDCPA*), is Letter #2.

7.    Attached to the SAC as Exhibit "F" [D.E. 19-6] is the e-mail, dated December 11, 2020, that Defendant sent Plaintiffs in an attempt to collect the Consumer Debt ("Letter #3"). SAC at ¶ 52. The written communication that gives rise to a portion of **COUNT 5** (*violation of §§ 1692e and 1692g(a) of the FDCPA*), **COUNT 7** (*violation of § 1692e(2)(A) of the FDCPA*), and **COUNT 8** (*violation of § 1692e(10) of the FDCPA*), is Letter #3.

8.    Attached to the SAC as Exhibit "J" [D.E. 19-10] is the e-mail, dated January 13, 2021, that Defendant sent Plaintiffs in an attempt to collect the Consumer Debt ("Letter #5"). SAC at ¶ 67. The written communication that gives rise to part of **COUNT 5** (*violation of §§ 1692e and 1692g(a) of the FDCPA*) and **COUNT 9** (*violation of § 1692e(2)(A) of the FDCPA*), is Letter #5.

9.    **COUNT 10** (*violation of 1692f(1) of the FDCPA*) arises from the $18,709.54 that Defendant unlawfully collected and otherwise coerced Plaintiffs into paying under protest. *See* SAC at ¶¶ 135-138; *see also* SAC at ¶ 136 ("Defendant continuously sought to collect amounts from Plaintiffs that Plaintiffs did not other owe and/or were otherwise already paid. In so doing,

**LAW OFFICES OF JIBRAEL S. HINDI, PLLC**
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

Defendant continued to demand, in addition to the underlying debt, an increasing amount of attorney's fees that Defendant did not have the authority to collect. Defendant's unrelenting collection efforts, coupled with the unexplained, ever changing amounts Defendant sought from Plaintiffs, caused Plaintiff to ultimately pay $18,709.54 to Defendant, unprotested, so as to cease Defendant's relentless, unlawful collection efforts.").

10. Finally, **COUNT 11** arises from Defendant's filing of "unsealed, and otherwise unredacted, documents with this Court that readily reveal the entire account and routing number of Plaintiffs' bank account." SAC at ¶ 142; *see also* SAC at ¶¶ 139-145.

### 1.2   DEFENDANT'S MOTION TO DISMISS

11. In its operative Motion to Dismiss [D.E. 24] (the "MTD"), Defendant presents a series of seven (7) arguments.

12. **First**, Defendant argues the SAC, *as a whole*, warrants dismissal because Plaintiffs do not plead for an injunction even though the SAC is titled "SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL / INJUNCTIVE RELIEF SOUGHT." MTD at ¶ 15; *see* MTD at ¶¶ 22-23 (wherein Defendant asserts that, because "*discrepancy between the relief indicated to be sought and the relief actually plead has put the Defendant in a position where it is unable to properly discern the scope of the relief sought in Plaintiffs' action… Defendant is not meaningfully able to respond to the pleadings, and this Honorable Court therefore has no other alternative but to dismiss the* [SAC]."(emphasis added).

13. **Second**, Defendant argues the SAC, *as a whole*, warrants dismissal because Plaintiffs' lack Article III standing. *See* MTD at ¶ 24 (wherein Defendant asserts that "[t]he gravamen of all of Plaintiffs' claims in the [SAC] is they suffered vaguely plead 'harm'").

14. **Third**, Defendant argues **COUNT 3** of the SAC, *see* SAC at ¶¶ 105-108 (*wherein Plaintiffs allege Defendant violated § 1692e(11) of the FDCPA by failing to disclose in Letter #2 that Letter #2 was a communication from a debt collector*) must be dismissed because Defendant *e-mailed* and *faxed* Letter #2 and, **although the faxed communication did not include the disclosures**, the body of the e-mail contained the disclosures required by § 1692e(11) of the FDCPA. MTD at ¶ 47; *see* MTD at ¶ 46 (wherein Defendant admits that Letter #2 "does not specifically include the 'magic' FDCPA words of disclosure"); *see also* Letter #2 (wherein

Defendant explicitly asserts at the top-left portion of Letter #2 that Letter #2 was sent "**Via Fax: (888) 718-8862**").

15.     **Fourth**, Defendant argues C<small>OUNT</small> **1** through C<small>OUNT</small> **10** should be dismissed because the SAC "does not present any facts actionable under the FDCPA or FCCPA against the Defendant for any collection conduct 'not authorized by law' and is rather a series of 'naked legal conclusions' unsupported by even the most basic facts, requiring dismissal." MTD at ¶ 47.

16.     **Fifth**, Defendant argues C<small>OUNT</small> **1** through C<small>OUNT</small> **6** of the SAC should be dismissed because "Defendant's first communication [with Plaintiffs] conforms with both Florida and [] Federal law" and, as such, "there is no basis in fact or law to support the [Plaintiffs'] claims in Count 1 through 6 of the [SAC]." MTD at ¶ 81.

17.     **Sixth**, Defendant argues C<small>OUNT</small> **7** through C<small>OUNT</small> **10** of the SAC must be dismissed because Plaintiffs "repeatedly accuse[] the Defendant of 'falsely representing the character and amount of the Consumer Debt'" and/or attempting to collect amounts that Defendant "'did not have the [lawful] authority to collect,'" MTD at ¶ 83, and such "alleged violations of the Defendant are mere speculation and do not include any specific facts to render them more than mere 'naked conclusions." MTD at ¶ 85.

18.     **Seventh**, and finally, Defendant argues C<small>OUNT</small> **11** of the SAC must be dismissed because Plaintiffs "have failed to establish both that the account number included in Defendant's exhibit is actually 'private,' and, assuming it was, why any concrete cognizable damages were incurred." MTD at ¶ 92.

## 2.     STANDARD OF REVIEW

19.     To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (abrogating Conley, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (*citing* Twombly, 550 U.S. at 556). The allegations of the claim must be taken

P<small>AGE</small> | **4** of **20**

L<small>AW</small> O<small>FFICES OF</small> J<small>IBRAEL</small> S. H<small>INDI</small>, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

as true and must be read to include any theory on which the plaintiff may recover. *See* Linder v. Portocarrero, 963 F. 2d 332, 334-36 (11th Cir. 1992) (*citing* Robertson v. Johnston, 376 F. 2d 43 (5th Cir. 1967)).

20. However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Twombly, 550 U.S. 544 at n. 8 (*quoting* Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984)).

21. In deciding a motion to dismiss, the Court must accept a complaint's well-pled allegations as true. Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). Such allegations must be construed in the light most favorable to the Plaintiff. Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir.2010). "In analyzing the sufficiency of the complaint, [the Court] limit[s] [its] consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir.2004). The Court may also consult documents that are attached to the motion to dismiss under the "incorporation by reference" doctrine – a document attached to a motion to dismiss may be considered without converting the motion into one for summary judgment if the document is central to the plaintiffs claim and undisputed. Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir.2002) (internal citations omitted); *see also* Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir.2005). "Undisputed" means that the authenticity of the document is not challenged. Id.

### 3.   ARGUMENT

22. As a preliminary matter, and despite the portion of the SAC specifically devoted to the issue of Article III standing, *see* SAC at ¶¶ 83-93, Defendant argues that Plaintiffs lack Article III standing to peruse their claims in this Court. In light of the scope of this argument, the existence of Article III standing shall be addressed before the discussion involving the sufficiency of Plaintiffs' substantive claims.

23. Beyond the issue of standing, as shown below, Plaintiffs have sufficiently plead a *prima facie* case for the alleged violations of the FDCPA and FCCPA, as well as single claim

arising under Florida common law, thereby giving Defendant fair notice of Plaintiffs' claims and the grounds upon which each rest.

24.     The sufficiency of Plaintiffs' claims arising under the FDCPA and FCCPA shall be addressed first and Plaintiff's Florida common law claim addressed thereafter.

## 3.1     PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS

25.     "Under settled precedent, the 'irreducible constitutional minimum' of standing consists of three elements: the Plaintiffs must have suffered an injury in fact, the defendant must have caused that injury, and a favorable decision must be likely to redress it. The party invoking the jurisdiction of a federal court bears the burden of establishing these elements to the extent required at each stage of the litigation." Trichell v. Midland Credit Mgmt., 964 F.3d 990, *7 (11th Cir. 2020) (*citing* and *quoting* Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). Simplified, Article III standing has three leading components: (1) *injury in fact*; (2) *causation*; and (3) *redressability.*

26.     "The 'foremost' standing requirement is **injury in fact**." Trichell at *8 (emphasis added) (*quoting* Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998)).

27.     "An injury in fact consists of '**an invasion of a legally protected interest**' that is both '**concrete and particularized**' and '**actual or imminent**, not conjectural or hypothetical.'" Trichell at *8 (emphasis added) (*quoting* Lujan, 504 U.S. 555 at 560). Simplified, *injury in fact* has four components: an (1) actual or imminent, and not conjectural or hypothetical, (2) invasion of a legally protected interest (3) that is concrete and (4) particularized. *See* Spokeo, 136 S. Ct. 1540 at 1548 ("To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" (*quoting* Lujan, 504 U. S. 555 at 560)); *see also* Cooper v. Atl. Credit & Fin., No. 19-12177, 2020 U.S. App. LEXIS 23719, at *8 (11th Cir. July 28, 2020) ("To establish standing, a Plaintiff must instead '**show that the violation harmed** … **the underlying concrete interest that Congress sought to protect**.'" (emphasis added) (*quoting* Casillas v. Madison Ave. Assocs., 926 F.3d 329, 333 (7th Cir. 2019)).

28.     "To be **particularized**, the injury 'must affect the plaintiff in a personal and individual way.' [*quoting* Lujan, 504 U. S. 555 at 560 n.1]. In other words, 'the injury in fact test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured.' [*quoting* Sierra Club v. Morton, 405 U.S. 727, 734-35 (1972)]. The

same principle holds true when the Plaintiffs invokes a statutory cause of action: 'where a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a **concrete**, **particularized**, and **personal injury** to that person as a result of the violation of the newly created legal rights.'" Trichell at *17 (emphasis added) (*quoting* Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A., 781 F.3d 1245, 1251 (11th Cir. 2015)).

29. "A '**concrete**' injury must be '*de facto*' – that is, it must be '**real**, and not abstract.'" Trichell at *8 (emphasis added) (*quoting* Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016)). "As a general matter, **tangible injuries qualify as concrete**." Trichell at *8 (*quoting* Spokeo, 136 S. Ct. 1540 at 1549). Allegations of either having "**made any payments** in response to" a challenged collection letter "or even … **wasted time** *or* **money** in determining whether to do so" are tangible and otherwise concrete injuries. Trichell at *8 (emphasis added).

30. Here, unlike the plaintiffs of Trichell, Plaintiffs have sustained *tangible injuries*, likes of which are objectively concrete. *See, e.g.,* SAC at ¶ 75 (whereby the totality of Defendant's unlawful conduct coerced Plaintiffs into paying Defendant $18,709.54 under protest); *see also* Trichell at *8 (exemplifying allegations of either having "made any payments in response to" a challenged collection letter "or even … wasted time or money in determining whether to do so" as tangible and otherwise concrete injuries for purposes of Article III standing).

31. Further, in light of the *actual damages* that Plaintiffs seek in **COUNT 1** *through* **COUNT 11**, Defendant's violations of the FDCPA and FCCPA, as well as Florida common law, are alleged to have caused *tangible* injury to Plaintiffs, thus, it is without question that Plaintiffs' *actual* injuries are sufficiently *particularized*.

32. Thus, Plaintiffs has sufficiently established the *injury in fact* component of Article III standing, leaving only *causation* and *redressability* – the likes of which are equally satisfied, as a decision in Plaintiffs favor will afford Plaintiffs both the *actual* and *statutory* damages sought herein and, *but for* the alleged illegal conduct of Defendant, Plaintiffs *would not* have sustained the complained of concrete injuries.

**3.2   PLAINTIFFS HAVE SUFFICIENTLY PLEAD *PRIMA FACIE* VIOLATIONS OF FDCPA, FCCPA, AND FLORIDA COMMON LAW, IN COUNT 1 THROUGH COUNT 11 OF THE SECOND AMENDED COMPLAINT**

33. In general, the FDCPA prohibit a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §

PAGE | **7** of **20**

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

1692(e). A debt collector violates this provision by falsely representing "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Id. Similarly, 15 U.S.C. § 1692(f) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692(f).

34. "To state a claim for violation of the FDCPA and FCCPA, Plaintiff must set forth sufficient factual allegations to raise plausible inferences that: (1) Defendant is a debt collector; (2) Plaintiff was 'the object of collection activity arising from consumer debt;' and (3) Defendant engaged in an act or omission prohibited by the FDCPA or FCCPA." Garrison v. Caliber Home Loans, Inc., 2017 WL 89001, at *4 (M.D. Fla. Jan. 10, 2017); Pescatrice v. Orovitz, P.A., 539 F.Supp.2d 1375, 1378 (S.D.Fla.2008); see also LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1189–91 (11th Cir. 2010).

### 3.2.1 DEFENDANT DOES NOT DISPUTE ITS STATUS AS A "DEBT COLLECTOR" OR THAT "PLAINTIFF WAS THE OBJECT OF COLLECTION ACTIVITY ARISING FORM A CONSUMER DEBT"

With respect to the present matter, Defendant *does not contest* that Plaintiffs have been the object of collection activity arising from a consumer debt. Further, Defendant *does not contest* that it (Defendant) is a debt collector as defined by the FDCPA or FCCPA. Looking to the SAC, Plaintiffs have sufficiently plead that Defendant is a "debt collector" within the meaning of the FDCPA and FCCPA, see SAC at ¶¶ 10-18, 29, as well as sufficiently plead that Plaintiffs were "the object of collection activity arising from [a] consumer debt." See SAC at ¶¶ 24, 39, 52, 63, and 67. Thus, the only issue before this Court is whether Plaintiffs have adequately alleged that Defendant has engaged in an act prohibited by the FDCPA and/or FCCPA. See Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015("The district court concluded and Appellees argue on appeal that the FDCPA does not apply to representations made in 'formulaic procedural filings' or to communications directed only to the consumer's attorney, rather than to the consumer himself. **We disagree**. The statutory text is entirely clear: the FDCPA applies to lawyers and law firms who regularly engage in debt-collection activity, **even when that activity involves litigation**, and categorically prohibits abusive conduct in the name of debt collection, **even when the audience for such conduct is someone other than the consumer**. The plain language of the FDCPA is

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

conclusive here, and so we must do no more than enforce the Act according to its terms." (emphasis added).

### 3.2.2 PLAINTIFFS HAVE ADEQUATELY ALLEGED THAT DEFENDANT HAS ENGAGED IN AN ACT PROHIBITED BY THE FDCPA AND/OR FCCPA

35.     With respect to the third element of Plaintiffs' *prima facie* case against Defendant, *i.e.,* whether Defendant engaged in an act or omission prohibited by the FDCPA or FCCPA, the "least sophisticated consumer" standard dictates whether a debt collector's communication, or other conduct, violates the FDCPA or FCCPA. *See* Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 1258 (11th Cir. 2014) (reiterating that the "least sophisticated consumer" standard governs "whether a debt collector's conduct is deceptive, misleading, unconscionable, or unfair under the statute." (internal quotations omitted)); LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1200 (11th Cir. 2010) (holding that the "least-sophisticated consumer" standard applies to evaluate claims under both § 1692e and § 1692f); Leonard v. Zwicker & Associates, P.C., 2017 WL 4979160, at *2 (11th Cir. Nov. 1, 2017) (applying the "least sophisticated consumer" standard to claims under § 1692g); *see also* Michael v. HOVG, LLC, 2017 WL 129111, at *5 (S.D. Fla. Jan. 10, 2017) (applying the least sophisticated consumer standard to determine whether a debt collector violated the FCCPA); Green v. Douglas, Knight & Assocs. (In re Cheaves), 439 B.R. 220 (Bankr. M.D. Fla. 2010 (same); Bank v. Schmidt, 124 So. 3d 1039 (Fla. Dist. Ct. App. 2013) (affirming class certification which applied the least sophisticated consumer standard to determine whether the FCCPA had been violated).

36.     Thus, in the context of the FDCPA and FCCPA, "[t]he inquiry is not whether the particular plaintiff-consumer was deceived or misled; instead, the question is whether the least sophisticated consumer would have been deceived by the debt collector's conduct." Crawford, 758 F.3d 1254 at 1259 (citation and internal quotations omitted).

37.     "The purpose of the least-sophisticated consumer standard is to ensure the protection of the gullible as well as the shrewd." LeBlanc, 601 F.3d 1185 at 1194; *see* Crawford, 758 F.3d 1254 at 1258-59 ("[t]he 'least-sophisticated consumer' standard takes into account that consumer-protection laws are 'not made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking, and the credulous.'" (*quoting* Jeter v. Credit Bureau, 760 F.2d 1168, 1172-73 (11th Cir. 1985))). The fact that a false statement may be

obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." Jeter, 760 F.2d at 1168.

38. "Literally, the least sophisticated consumer is not merely 'below average,' he is the very last rung on the sophistication ladder. Stated another way, he is the single most unsophisticated consumer who exists. Even assuming that he would be willing to do so, such a consumer would likely not be able to read a collection notice with care, let alone interpret it in a reasonable fashion." Gammon v. GC Servs., 27 F.3d 1254, 1257 (7th Cir. 1994); Russell v. Equifax A.R.S.,74 F.3d 30, 34 (2d Cir.1996) ("'the test is how the least sophisticated consumer – one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, every day, common consumer – understands the notice he or she receives.'"). As such, because of the viewpoint required to properly invoke the least sophisticated consumer standard, issues which require the application thereof are reserved for the jury. *See* Leonard v. Zwicker & Associates, P.C., 2017 WL 4979160, at *3 (11th Cir. Nov. 1, 2017) ("[g]enerally, the question of whether the least sophisticated consumer would be confused or misled by a debt collector's communication is one for the jury"); *see, e.g.*, Pescatrice v. Orovitz, 539 F. Supp. 2d 1375, 1381 (S.D. Fla. 2008) (whether a communication was "deceptive is a material issue of disputed fact for the jury, as fact finder, to resolve").

39. As shown below, the factual allegations of Plaintiffs are more than sufficient to raise a plausible inference that Defendant engaged in conduct prohibited by the FDCPA or FCCPA with respect to **COUNT 1** through **COUNT 10** of the SAC, as well as violation of Florida common law as set forth in **COUNT 11** of the SAC.

### COUNT 1 – VIOLATION OF FLA STAT. § 559.72(9) *VIA* LETTER #1

40. With respect to **COUNT 1**, Plaintiffs claim "Defendant, by and through Letter #1, committed four separate and independent violations of the FCCPA." SAC at ¶ 96.

41. **One**, "Defendant violated § 559.72(9) of the FCCPA by attempting to collect $69,035.80 from Plaintiffs because Defendant knew that said amount was not legitimate or otherwise owed by Plaintiffs, as said amount was comprised of [unlawful interest and] amounts already paid by Plaintiffs. SAC at ¶ 97. Here, it is undeniable that the $69,035.80 Defendant demanded from Plaintiffs, by and through Letter #1, was comprised illegitimate amounts, for two reasons: **(1)** the Creditor of the Consumer Debt had "explicitly claimed the amount of the Consumer debt was $24,481.47, whereby said amount ($24,481.47) was nonetheless already paid

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

by Plaintiffs," *see* SAC at ¶ 36, and; **(2)** the amount of the Consumer Debt was inexplicably reduced to $47,627.69 in Letter #2, *see* SAC at ¶ 44, without any payment being made by Plaintiffs.

42. **Two**, "Defendant violated § 559.72(9) of the FCCPA by asserting a legal right that Defendant knew did not exist, *namely*, the right to file a lien against Plaintiffs' Residence *without further notice* if Plaintiffs did not pay the $69,035.80 that Defendant unlawfully demanded from Plaintiffs." SAC at ¶ 98. Here, there is no legal mechanism which allows Defendant to file a lien against Plaintiff's property *without further notice*, as Defendant and/or the Creditor, at minimum, would first need to *sue* Plaintiffs for the recovery of the Consumer Debt, of which would fundamentally require that notice (*i.e.,* Service of Process) be given to Plaintiffs before Defendant and/or the Creditor even had the opportunity to obtain the threaded lien.

43. **Three**, "Defendant violated § 559.72(9) of the FCCPA asserting that 'interest accrues at a rate of 18% per annum' with respect to the $69,035.80 Defendant sought to collect from Plaintiffs because, *in so doing*, Defendant was asserting the right to collect interest from Plaintiffs at a rate Defendant knew was impermissible and/or illegitimate." SAC at ¶ 99. Here, the Declaration of Condominium for Sabal Ridge Apartments (the "Declaration"), attached as Exhibit "D" to the SAC, SAC at ¶ 46, is that which Defendant repeatedly proffered in support of its prior Motions to Dismiss. *See* D.E. 10 at 16, ¶ 58(G); D.E. 6-5; D.E. 7-5; and D.E. 10-3. Faced with undeniable, explicitly allegations that Defendant was attempting to collect interest at an unlawful rate from Plaintiffs, *see* SAC at ¶ 47, Defendant, now, inexplicitly claims *different* documentation purportedly allows for the assessment of interest at 18%. *See* MTD at ¶ 69. Regardless of the validity behind Defendant's new proffer, at best, Defendant has created an issue of fact. *See* Moreno v. Carnival Corp., 488 F. Supp. 3d 1233, 1236 (S.D. Fla. 2020) ("After careful consideration, the Court agrees with Plaintiff. On a motion to dismiss for failure to state a claim, the Court is generally confined to the four corners of the complaint unless 'the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim.'")

44. **Four**, "Defendant violated § 559.72(9) of the FCCPA by falsely asserting that 'the law does not require the [Creditor] or [Defendant] to wait that entire period [*i.e.*, the 30-day period after Plaintiffs' receipt of the Letter #1] to collect the debt [and] [f]or this reason, you are required to pay the payment as specified above,' *see* Letter #1 at 3, because Defendant knew that the law *does* require Defendant to cease collection efforts if 'the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed….' [*citing* 15 U.S.C. § 1692g(b)]."

SAC at ¶ 100. Put differently, the inclusion of the language, "the law does not require the [Creditor] or [Defendant] to wait that entire period [*i.e.*, the 30-day period after Plaintiffs' receipt of the Letter #1] to collect the debt [and] [f]or this reason, you are required to pay the payment as specified above,'" *see* SAC at ¶ 100, undeniably overshadows the least sophisticated consumer's right to request validation of the underlying debt, as such language erroneously causes the least sophisticated consumer to believe that, *even if* he or she disputed the underlying debt, Defendant had no obligation to cease its collection efforts. *See, e.g.,* Rivera v. Amalgamated Debt Collection Servs., No. 05-20176-CIV-LENARD/KLEIN, 2005 U.S. Dist. LEXIS 61869, at *10 (S.D. Fla. Nov. 23, 2005) ("Viewed in the light most favorable to the Plaintiff, the language, '[t]herefore, unless this matter can be resolved within (30) days of the above date, it will be necessary to consider the institution of legal procedures against you,' [] could be found to directly contradict the subsequent notice that, '[i]f you dispute the debt in whole or in part within (30) days of the date set forth above, we will mail verification of the debt to you,' and, because it is contained in the first paragraph of the notice, tends to overshadow that language, as well.").

### COUNT 2 – VIOLATION OF 15 U.S.C. §§ 1692e and 1692g(a) *VIA* LETTER #2

45.     With respect to **COUNT 2**, Plaintiffs claim Defendant, by and through Letter #2, violated § 1692e and § 1692g(a) of the FDCPA because "[a]t no point in time did Defendant adequately disclose or otherwise provide to Plaintiffs, whether orally or in writing the information, statements, and/or disclosures required by 15 U.S.C. § 1692g(a)(3)-(5) [and], [a]s such, [by] sending Letter #2 to Plaintiffs without having provided Plaintiffs with the statements, and/or disclosures required by, and in conformance with, § 1692g(a)(3)-(5) of the FDCPA, Defendant violated § 1692e and § 1692g(a) of the FDCPA." SAC at ¶ 103. Here, as set forth above, *supra* ¶ 45, Defendant did not provide Plaintiffs with the disclosures required by § 1692g(a)(3)-(5) because when Defendant *attempted* to provide said disclosures, it (Defendant) completely overshadowed Plaintiffs' right to dispute the Consumer Debt within 30-days and obtain written validation of the Consumer Debt. Not only that, but even after Plaintiffs properly exercised their right to obtain written validation of the Consumer Debt, such statutory right to written validation was completely ignored by Defendant. *See* SAC at ¶ 51.

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

**COUNT 3 – VIOLATION OF 15 U.S.C. § 1692e(11) *VIA* LETTER #2**

46. With respect to **COUNT 3**, Plaintiffs claim "Defendant violated § 1692e(11) of the FDCPA by failing to state that it (Defendant) was a debt collector in Letter #2 and/or by failing to state in Letter #2 that it (Letter #2) was a communication from a debt collector." SAC at ¶ 107.

47. Defendant attempts to defeat this claim by arguing that it (Defendant) *did* provide the disclosure required by § 1692e(11), albeit in an e-mail that was used to send Letter #2. MTD at ¶ 47; *see* MTD at ¶ 46 (wherein Defendant admits that Letter #2 "does not specifically include the 'magic' FDCPA words of disclosure"); *see also* Letter #2 (wherein Defendant explicitly asserts at the top-left portion of Letter #2 that Letter #2 was sent "**Via Fax: (888) 718-8862**").

48. Section 1692e(11) expressly requires debt collectors to disclose in the initial communication that the communication is from a debt collector and that any information obtained will be used for debt collection purposes and "to disclose in subsequent communications that the communication is from a debt collector," but exempts formal pleadings from those disclosures. Section 1692k(a) states that "[a]ny debt collector who fails to comply with any provision of the [FDCPA]" is liable for that violation. The disclosure that the communication is from a debt collector *must be made* in all subsequent communications with the consumer. *See* Edwards v. Niagara Credit Sols., Inc., 584 F.3d 1350, 1353 (11th Cir. 2009) (*citing* 15 U.S.C. § 1692e(11)) ("[s]ection 1692e(11) requires a debt collector 'to disclose in subsequent communications that the communication is from a debt collector.").

49. Defendant's attempt to defeat this claim fails because the operative communication, *i.e.*, Letter #2, explicitly states to have been transmitted to Plaintiffs *via* Fax – not e-mail – and *nowhere* within Letter #2 does Defendant state that it (Defendant) is a debt collector or that Letter #2 is a communication from a debt collector. Defendant cannot overcome the disclosure requirement of § 1692e(11) of the FDCPA by claiming the disclosures were provided *via* a sperate communication. *See* Paul v. Syndicated Office Sys., Inc., 2012 WL 12838293 (S.D. Fla. Nov. 29, 2012) (allegations that collection agency did not explicitly disclose that it was a debt collector, but simply stated its name, plausibly stated claim for violation of § 1692e(11)); Manno v. Healthcare Revenue Recovery Group, L.L.C., 289 F.R.D. 674 (S.D. Fla. 2013) (violation even where the recipient independently knew that the caller was a debt collector).

### COUNT 4 – VIOLATION OF 15 U.S.C. § 1692e(2)(A) *VIA* LETTER #2

50. With respect to **COUNT 4**, Plaintiffs claim "Defendant, by and through Letter #2, violated § 1692e(2)(A) of the FDCPA in two (2) separate and independent ways." SAC at ¶ 110.

51. **One**, "Defendant violated § 1692e(2)(A) of the FDCPA by falsely representing the character and amount of the Consumer Debt by falsely asserting in Letter #2 that the Consumer Debt was $47,627.69, as said amount was comprised of principal and interest that Plaintiffs did not owe and/or had already been paid by Plaintiffs, as well as attorney's fees which Defendant could not lawfully recover from Plaintiffs." *See* SAC at ¶ 111. Here, just as with Defendant's unlawful demand for $69,035.80 in Letter #1, it is undeniable that the $47,627.69 Defendant attempted to collect from Plaintiffs *via* Letter #2 was not an accurate, or otherwise true, representation of the amount owed by Plaintiffs by way of the inexplicable, ever-changing amount Defendant demanded from Plaintiffs in subsequent communications. *See* SAC at ¶ 58 (setting aside, momentarily, the fact that Defendant proffers a *conveniently round number* for the total amount of interest owed by Plaintiff in Letter #3, *i.e.*, $34,000, "Defendant falsely represents Letter #3 the amount of the Consumer Debt (inclusive of principal, interest, and attorney's fees) was $51,524.43.").

52. **Two**, "Defendant violated § 1692e(2)(A) of the FDCPA by falsely representing the character and amount of the Consumer Debt, as Defendant falsely representing in Letter #2 that the Consumer Debt "accrues [interest] at the highest rate per annum (18%)." SAC at ¶ 112; *see also* SAC at ¶ 45 ("Prior to sending Letter #1, Defendant's knew that the Consumer Debt was not subject to 'the highest rate per annum' of 18%, whereby such knowledge is made explicit by way of the documents Defendant filed with this Court in support of motion to dismiss, *see* D.E. 6-5 D.E. 7-5; and D.E. 10-3, as well as quoted by Defendant therein," of which states, "'[w]hen in default, the delinquent installment there due to [the Creditor] shall bear interest at the rate of 8% per annum until such delinquent assessment or installment thereof, and all interest due thereon, has been paid in full to [the Creditor].'"). SAC at ¶ 47; *see also Supra* at 44.

### COUNT 5 – VIOLATION OF 15 U.S.C. § 1692e(2)(B) *VIA* LETTERS #2, #3, AND #5

53. With respect to **COUNT 5**, Plaintiffs claim Defendant, in each Letter #2, Letter #3, and Letter #5, violated § 1692e(2)(B) of the FDCPA, of which renders unlawful "[t]he false representation of any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2)(B). In particular, Plaintiffs claim

Defendant violated § 1692e(2)(B) in the context of Letter #2, Letter #3, and Letter #5, "by falsely representing that Defendant was lawfully entitled to collect attorney's fees from Plaintiffs as part of the Consumer Debt." *See* SAC at ¶¶ 115-117. Here, Defendant has not proffered any argument showing that it (Defendant) had a statutory or contractual right to collect attorneys' fees from Plaintiffs as part of the Consumer Debt. At best, Defendant has made argument alluding to a right to attorneys fees *as part of a lien*, MTD at ¶ 67, but no such lien has been obtained.

### COUNT 6 – VIOLATION OF 15 U.S.C. § 1692e(10) *VIA* LETTER #2

54. With respect to **COUNT 6**, Plaintiffs claim that, by and through Letter #2, Defendant "violated § 1692e(10) of the FDCPA by falsely representing that, in response to Plaintiffs' written dispute of the Consumer Debt, 'enclosed is the full and complete validation evidencing [Plaintiffs'] debt to the [Creditor],' [*citing* Letter #2 at 1]," because "[a]s illustrated by the Response to Letter #2, [*of which is attached as Exhibit "B" to the SAC*, *see* D.E. 19-2] not only had Defendant *not* provided the validation that (Defendant) claimed to be contained within Letter #2, but further, the documents which Defendant purported to reflect 'the full and complete validation' of the Consumer Debt were both incomplete and inaccurate." SAC at ¶ 120. Here, as set forth in the SAC, despite properly exercising Plaintiffs' right to receive written validation of the Consumer Debt, Defendant did not provide written validation of the Consumer Debt, thereby rendering Defendant's assertion that "enclosed is a full and complete validation" objectively *false*. *See* SAC at ¶ 51 ("We have received your letter dated March 9, 2020, regarding [Plaintiffs' Residence] and note that while you purport to dispute the content of [the Response to Letter #1], you have still failed to validate that any amount is owed by [Plaintiffs] to [the Creditor].").

### COUNT 7 – VIOLATION OF 15 U.S.C. § 1692e(2)(A) *VIA* LETTER #3

55. With respect to **COUNT 7**, Plaintiffs claim that "Defendant, by and through Letter #3, violated § 1692e(2)(A) of the FDCPA in two (2) separate and independent ways." SAC at ¶ 123. Specifically, Plaintiffs claim that, by and through Letter #3: **[1]** "Defendant violated § 1692e(2)(A) of the FDCPA by falsely representing amount of the Consumer Debt by falsely asserting in Letter #3 that the 'principal amount' of the Consumer Debt was $14,924.43," SAC at ¶ 124; and **[2]** "Defendant violated § 1692e(2)(A) of the FDCPA by falsely representing character and amount of the Consumer Debt, as Defendant falsely represented in Letter #3 that Plaintiffs '**owe interest on the past due amount** [*i.e.*, $14,924.43] **totaling approximately $34,000.00**.'" SAC at ¶ 125 (emphasis added). As set forth above, across the various written correspondence

PAGE | **15** of **20**

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

between Plaintiffs and Defendant, each written collection attempt made by Defendant unfurled an ever-changing amount owed by Plaintiffs – with the most egregious example found within Letter #3, wherein Defendant, for the first time, assert the amount of interest owed by Plaintiffs was a conveniently round number: **$34,000.00**. Setting aside the *suspiciously precise* $34,000.00 worth of interest claimed by Defendant in Letter #3, given that this Court must accept a complaint's well-pled allegations as true, Plaintiffs claim that Defendant falsely represented the amount of the Consumer Debt *via* Letter #3 survives Defendant's Motion to Dismiss. See SAC at ¶¶ 52-60.

## COUNT 8 – VIOLATION OF 15 U.S.C. § 1692e(10) *VIA* LETTER #3

56. With respect to **COUNT 8**, Plaintiffs claim "Defendant, by and through Letter #3, violated § 1692e(10) of the FDCPA by falsely representing in Letter #3 that 'due to the principal amounts owed and the statutory application of payments, [Plaintiffs] will owe interest and attorneys fees if the matter is pursued in Court and the fees [Plaintiffs] have incurred will not be recoverable in the context of any collection action.'" SAC at ¶ 128. Here, simply put, Defendant's assertion that the fees Plaintiffs have incurred will not be recoverable in the context of any "collection action" is fundamentally false, as Plaintiffs are entitled to recover *actual damages* as part of any successful prosecution of a claim arising under the FCCPA or FDCPA. See Polanco v. Igor & Co., 2019 U.S. Dist. LEXIS 128735, at *12 (S.D. Fla. July 31, 2019)("Both the FDCPA and FCCPA provide for actual and statutory damages").

## COUNT 9 – VIOLATION OF 15 U.S.C. § 1692e(10) *VIA* LETTER #3

57. With respect to **COUNT 9**, Plaintiffs claim "Defendant, by and through Letter #5, violated § 1692e(2)(A) of the FDCPA in two (2) separate and independent ways." SAC at ¶ 131. Specifically, Plaintiffs claim that, by and through Letter #3: **[1]** "Defendant violated § 1692e(2)(A) of the FDCPA by falsely representing character and amount of the Consumer Debt, as Defendant falsely represented in Letter #5 that Plaintiffs 'owe interest on the pause due amount in excess of $34,000.00,'" *see* SAC at ¶ 132, and; **[2]** "Defendant violated § 1692e(2)(A) of the FDCPA by falsely representing amount of the Consumer Debt, as Defendant falsely represented in Letter #5 that Plaintiffs 'the principal amount' associated with the Consumer Debt was '$14,924.43.'" SAC at ¶ 133. Here, just as with the other § 1692e(2)(A) based claims proffered by Plaintiffs with respect to Letter #1 and Letter #2, the ever-changing amount Defendant demanded from Plaintiffs objectively illustrate that Defendant, continuously, falsely represented the amount and character of the Consumer Debt, as during the discourse between Plaintiffs and Defendant, no payments

were made by Plaintiffs, yet Defendant's representation as to the amount the Consumer Debt, and the computation thereof, *increased* and *deceased* by tens of thousands of dollars without any explanation.

### COUNT 10 – VIOLATION OF 15 U.S.C. § 1692f(1)

58. With respect to **COUNT 10**, Plaintiffs claim Defendant violated § 1692f(1) of the FDCPA by unlawfully collecting amounts from Plaintiffs that Defendant did not have the legal authority to collect. As detailed in the pleadings:

> Defendant berated Plaintiffs with multiple different collection attempts, whereby in each such collection attempt, Defendant continuously sought to collect amounts from Plaintiffs that Plaintiffs did not other owe and/or were otherwise already paid. In so doing, Defendant continued to demand, in addition to the underlying debt, an increasing amount attorney's fees that Defendant did not have the authority to collect. Defendant's unrelenting collection efforts, coupled with the unexplained, ever changing amounts Defendant sought from Plaintiffs, caused Plaintiff to ultimately pay $18,709.54 to Defendant, unprotest, so to cease Defendant's relentless, unlawful collection efforts.

SAC at ¶ 136.

59. Here, Plaintiffs claim the *only reason* the $18,709.54 was paid to Defendant was due to "Defendant's unrelenting collection efforts, coupled with the unexplained, ever changing amounts Defendant sought from Plaintiffs." SAC at ¶ 136. The mere fact that funds were paid to Defendant do not transform unlawful debt collection methods lawful actions or otherwise imbue Defendant with the right to collect funds it (Defendant) did not otherwise have. To the contrary, § 1692f(1) of the FDCPA is explicitly limited to situations where, as in the present case, funds were unlawfully collected. *See* 15 U.S.C. § 1692f(1) ("The **collection** of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." (emphasis added).

### COUNT 11 – VIOLATION OF FLORIDA COMMON LAW

60. With respect to **COUNT 11**, Plaintiffs claim Defendant engaged in wrongful conduct which Florida common law recognizes as giving rise to an *invasion of privacy* tort. *See* SAC at ¶ 140 ("Florida common law recognizes 'four types of wrongful conduct that can all be remedied with resort to an invasion of privacy action,' whereby one of which is the '**public disclosure of private facts**,' *i.e.,* '**the dissemination of truthful private information which a reasonable**

PAGE | **17** of **20**

**LAW OFFICES OF JIBRAEL S. HINDI, PLLC**
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

**person would find objectionable**.'"" (*citing* Agency for Health Care Admin. v. Associated Indus., 678 So. 2d 1239, 1252 n.20 (Fla. 1996))).

61. As set forth in the pleadings:

> With respect to the present matter, **on three separate occasions**, *see* D.E. 6-4; D.E. 7-4; D.E. 10-2, Defendant filed unsealed, and otherwise unredacted, documents with this Court that readily reveal the entire account and routing number of Plaintiffs' bank account. It is anomic that Defendant, by and through each filing, disseminated Plaintiffs' private information. Fed.R.Civ.P. 5.2(a)(4) ("in an electronic or paper filing with the court that contains an individual's … financial-account number, a party or nonparty making the filing may include only… the last four digits of the financial-account number."); Committee Notes on Rule 5.2 – 2007 ("Parties must remember that any personal information not otherwise protected by sealing or redaction **will be made available over the internet**." (emphasis added)); *see also* Id. ("While providing for the public filing of some information, such as the last four digits of an account number, the rule does not intend to establish a presumption that this information never could or should be protected. For example, **it may well be necessary in individual cases to prevent remote access by nonparties to any part of an account number** or social security number." (emphasis added)).
>
> The remaining inquiry, whether a "reasonable person would find objectionable," indeed is a question for the jury. *See* Harms v. Miami Daily News, Inc., 127 So. 2d 715, 718 (Fla. 3d DCA 1961) (in action for public disclosure of private facts, question of whether remarks published by newspaper would be objectionable to reasonable person was for the jury).
>
> As a result of the Publications, Plaintiffs have suffered harm, both mentally and physically. While unfettered public access to the Sensitive Financial Information can be stemmed by *sealing* the record, the harm suffered by Plaintiffs cannot be undone. Indeed, the length of time the Sensitive Financial Information remains publicly accessible is a consideration in the context of damages, as the likelihood of, *for example*, identity or financial theft, increases longer the information remains accessible. Yet, there is no minimum duration or timeframe. Upon the initial publication, *see* D.E. 6-4, Plaintiffs' were immediately availed to irreversible harm, of which will perpetually cloud the financial security and welfare of Plaintiffs.

SAC at ¶¶ 142-144; *see also* SAC at ¶¶ 76-82.

PAGE | **18** of **20**

**LAW OFFICES OF JIBRAEL S. HINDI, PLLC**
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

62.     By the clear, and detailed allegations of the SAC, there can be no mistake that Plaintiffs sufficiently plead a claim, under Florida common law, of *public disclosure of private facts*. The SAC clearly articulates, not only the elements of the claim itself, but articulates how each of the elements are satisfied with respect to Plaintiffs claim and, in so doing, illustrates that the *only remaining inquiry* to definitively establish Defendant's liability is "whether a 'reasonable person would find [Defendant's publication of Plaintiffs' personal information] objectionable,'" *see* SAC at ¶ 143, of which is a question for the jury. *See* Harms v. Miami Daily News, Inc., 127 So. 2d 715, 718 (Fla. 3d DCA 1961) (in action for public disclosure of private facts, question of whether remarks published by newspaper would be objectionable to reasonable person was for the jury).

### 4. **CONCLUSION**

63.     As made clear by the detailed pleadings, the factual allegations of Plaintiffs are more than sufficient to raise a plausible inference that Defendant engaged in conduct prohibited by the FDCPA or FCCPA with respect to **COUNT 1** through **COUNT 10** of the SAC, as well as violation of Florida common law as set forth in **COUNT 11** of the SAC. Defendant's attempt to paint the SAC as *somehow* failing to state a claim is, at best, misguided.

64.     WHEREFORE, Plaintiff Gregory Harold Pope and Plaintiff Michelle Bernadette Pope, respectfully, request that the Motion to Dismiss [D.E. 24] the Second Amended Complaint [D.E. 19] filed by Defendant Kaye Bender Rembaum, P.L. be denied without delay.

Dated: August 23, 2021

Respectfully Submitted,

 /s/ Thomas J. Patti
**JIBRAEL S. HINDI, ESQ.**
Florida Bar No.: 118259
E-mail:   jibrael@jibraellaw.com
**THOMAS J. PATTI, ESQ.**
Florida Bar No.: 118377
E-mail:   tom@jibraellaw.com
The Law Offices of Jibrael S. Hindi
110 SE 6th Street, Suite 1744
Fort Lauderdale, Florida 33301
Phone:    954-907-1136
Fax:      855-529-9540

*COUNSEL FOR PLAINTIFF*

PAGE | **19** of **20**

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 23, 2021, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

 /s/ Thomas J. Patti
**THOMAS J. PATTI, ESQ.**
Florida Bar No.: 118377

PAGE | **20** of **20**

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com